### MORRIS COUNTY TRACTION CO. v. HENCE.

(Circuit Court of Appeals, Third Circuit. July 3, 1922.)

No. 2840.

Copyrights ⬅83—Evidence held not to support finding of violation of copyright.

Evidence *held* not to support finding that defendant published a map which plaintiff, under Comp. St. § 9517, was entitled to the exclusive right to publish.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Bill by Ernest Hence against the Morris County Traction Company. Decree for plaintiff, and defendant appeals. Decree vacated, and cause remanded, with instructions to dismiss bill.

King & Vogt, of Morristown, N. J. (Elmer King and Robert H. Schenck, both of Morristown, N. J., of counsel), for appellant.

W. P. Preble, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Ernest Hence filed a bill against the Morris County Traction Company, charging it with violation of the copyright which section 9517, United States Compiled Statutes, gave him in the exclusive right "to print, reprint, publish, and vend" a certain map. As no contention is made that the traction company printed, reprinted, or vended such copyrighted map of Northern New Jersey, which is here involved, the case resolves itself into the legal question whether the proofs show the traction company published said map. On that question, the court below found for the plaintiff and awarded him damages. Whereupon the defendant took this appeal.

The testimony, in which there was no dispute, showed that in 1920 one Latassa, who was getting up an advertising sheet of Northern New Jersey concerns, came to the traction company's office and solicited an

advertisement. No advertisement was given him, but while he was in the office he saw, underneath the glass on the office table, a copy of the map of Northern New Jersey, which Hence, the plaintiff, had copyrighted eight years before. What took place is thus stated by O. G. Schultz, the secretary of the traction company:

"Q. What did Mr. Latassa want to do—what scheme did he have in mind when he came to see you as he told you? A. As he told me, it was the advertising of local concerns in the district, and it made it attractive if he could have a map of the route, which would, of course, benefit us to that extent.

"Q. Did he see that you had a map? A. Yes; he referred to it. He says, 'This is just what I wanted.' It was under my glass on the end of my table.

"Q. Then what did you tell him? I don't want to rehash it all, but I want to get it in detail. A. My recollection is I told him this map was prepared by Mr. Hence, and to give him the address I looked it up in the telephone book and told him to arrange with Mr. Hence, and everything would be all right, and he left the office and said he would.

"Q. Did you tell him it had been copyrighted? A. Well, I think I referred to the bottom of it— This is marked 'copyrighted.'"

"Q. Then he went away? A. And I haven't seen him since. * * *

"Q. Did you have anything to do with the publication—you or your company have anything to do with the publication—of this map? A. Absolutely nothing.

"Q. Had you anything to do with the publication of the advertisements around the map? A. Neither the publication nor the solicitation.

"Q. Had you anything to do with the issuing of these maps? A. Not in the least; nothing whatever.

"Q. Counsel on the other side has asked you whether you had paid for this memorandum at the top of the map: 'Watch your step, Morris County Traction Company, Safety First'—pay anything for that? A. No, sir; we never paid Mr. Latassa—we never paid him anything.

"Q. Did you agree to pay him anything? A. No, sir.

"Q. Did you have any contract or agreement with him in reference to the words that appear above the map? A. None at all.

"Q. Now, as to issuing these maps, all you did was he sent you 500, did he not? A. He sent us 500 copies.

"Q. And you sent those to your three stations? A. We kept some in the office, and sent the rest to the two dispatching offices at Dover and Summit."

This comprises the entire proof in the case in that regard, and the court in its opinion rightly said:

"The defendant did not sell any of the maps, and, so far as appears from the testimony, none of the 500 secured by it ever reached the public, or prospective purchasers of maps."

Assuming, as we do, that Latassa wronged Hence by publishing his copyrighted map on his advertising sheet, we are unable to see how the traction company became a participant in that wrong. Its entire good faith and innocence from any wrongful intent, and its desire to respect Hence's rights, are evidenced by the fact that, when Hence's map attracted the attention of Latassa, the secretary of the company called the latter's attention to Hence's copyright, gave him the latter's address, and advised him to see him and arrange to get permission to use it. When, therefore, Latassa later gratuitously sent a lot of his maps to the company's office, the receipt and subsequent retention of them by the company shows neither an intent of wrongdoing, or indeed such an act, and if an innocent receiving and a guiltless retention

of these gratuitously distributed sheets were to be adjudged a publication by this traction company of the advertising sheet, in which the map had been wrongfully placed by Latassa, the Copyright Law would be an instrument of wrong to innocent people rather than a punisher · of evil-minded violators of its provisions.

Finding the traction company has done no wrong, and that a simple inquiry by the plaintiff before he filed this bill would have disclosed the groundlessness of this complaint, the decree below is vacated, and the cause remanded, with instructions to dismiss the bill; the plaintiff to pay costs in this court and the court below.